*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JAMES A. REED TRUST.

---

PATRICIA A. BIRK, also known as PATTY BIRK, individually and as Trustee of the JAMES A. REED TRUST,

UNPUBLISHED
November 14, 2024
9:59 AM

Appellee/Cross-Appellant,

v

No. 366701
Cass Probate Court
LC No. 2020-000196-TV

GERALD A. REED and ROGER L. REED,

Appellants/Cross-Appellees.

---

Before: BOONSTRA, P.J., and MURRAY and CAMERON, JJ.

PER CURIAM.

Appellants appeal the probate court's order granting reformation of the James A. Reed Trust (the Trust). Appellee also cross-appeals, challenging other aspects of the order.[1] We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Decedent, James A. Reed, died testate in March 2020. Relevant to this appeal, the Trust held, at the time of decedent's death, real property in Michigan and Indiana as well as membership to a limited-liability company (LLC). Decedent was the original trustee of the Trust, and the Trust provided that, after decedent's death, appellee would be the first choice as successor trustee, and appellant Roger L. Reed the second. The Trust directed the trustee, upon decedent's death, to

---

[1] Appellee's cross-appeal seeks affirmance of the probate court's order on alternative grounds. Appellee did not need to cross-appeal, because an appellee may argue alternative grounds for affirmance on appeal. *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994); *Vanslembrouck v Halperin*, 277 Mich App 558, 565; 747 NW2d 311 (2008). For simplicity, we will treat this case as a single appeal.

-1-

distribute "the membership units of James A. Reed Farm Properties, LLC, a Michigan Limited Liability Company[,]" to appellee; "the stock of Reed Farms, Inc. an Indiana corporation[,]" to nonparty David J. Reed, and "the remaining trust assets in equal shares" to appellants.

On the same day he executed the Trust, decedent, as trustee, and appellee executed the Operating Agreement for James A. Reed Farm Properties, LLC (the LLC). The Operating Agreement states in relevant part:

> 1.1 **Formation.** James A. Reed Farm Properties, LLC (the "Company") has been organized as a Michigan limited liability company pursuant to the Michigan Limited Liability Company Act, as amended ("Act") by the filing of Articles of Organization ("Articles") with the Department of Consumer and Industry Services of the State of Michigan as required by the Act.

But, no Articles of Organization were filed for the LLC before decedent died. Exhibit A to the Operating Agreement listed the Trust and appellee as the LLC's two members, with the Trust owning 99% of the entity, and appellee owning the remaining 1%. The initial capital contribution for the LLC consisted of six Michigan properties (the Michigan properties). Three days after creating the Trust and signing the Operating Agreement, decedent executed quitclaim deeds conveying the Michigan properties to the Trust.

After decedent's death, Appellee, as trustee, sought to file the LLC's Articles of Organization so she could transfer the Michigan properties from the Trust to the LLC. Appellants petitioned for instructions regarding the Trust, asking the probate court, in pertinent part, to find that the Trust clearly and unambiguously provided that appellants inherited the Michigan properties in equal shares. Appellee filed a counterpetition seeking reformation of the Trust under MCL 700.7415 of the Estates and Protected Individuals Code, MCL 700.1101 *et seq.*, arguing that decedent's intent was for appellee to inherit the Michigan properties. After a bench trial, the probate court issued its written opinion and order finding that decedent intended to bequeath the Michigan properties to appellee. It further reasoned that decedent made a mistake of law by believing that the Operating Agreement, alone, was sufficient to effectuate the transfer of the Michigan properties to the LLC. As such, the probate court reformed the Trust and directed appellee, as trustee, to form the LLC, transfer the Michigan properties from the Trust to the LLC, and transfer the LLC's remaining membership units to appellee. Appellants now appeal.

## II. STANDARDS OF REVIEW

A dispositional ruling under the Estates and Protected Individuals Code is reviewed for an abuse of discretion. *In re Estate of Vansach*, 324 Mich App 371, 385; 922 NW2d 136 (2018). A court abuses its discretion if it "chooses an outcome outside the range of reasonable and principled outcomes." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks omitted). However, "[t]he probate court necessarily abuses its discretion when it makes an error of law." *Id*. (quotation marks omitted).

Factual findings underlying a probate court's dispositional ruling are reviewed for clear error. *Portus*, 325 Mich App at 381. "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to

support the finding." *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003).  This Court defers to the probate court on credibility determinations, and otherwise gives broad deference to the probate court's findings of fact because of its unique vantage point regarding factors not readily ascertainable to the reviewing court.  *In re Erickson Estate*, 202 Mich App 329, 331; 508 NW2d 181 (1993); MCR 2.613(C).

This Court also reviews de novo whether the probate court properly interpreted the relevant statutes, as well as its construction of the language of a will or trust.  *In re Miller Osborne Perry Trust*, 299 Mich App 525, 529; 831 NW2d 251 (2013).

## III.  ANALYSIS

Appellants argue the probate court erred by granting reformation of the Trust because appellee failed to provide sufficient evidence that doing so would effectuate decedent's intent.  We disagree.

"In resolving a dispute concerning the meaning of a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor," which is "to be carried out as nearly as possible." *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008). The settlor's intent "is gauged from the trust document itself, unless there is ambiguity." *Id*.  But, a probate court:

[M]ay reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.  [MCL 700.7415.]

There was ample evidence to support the probate court's finding that decedent intended for appellee to inherit the Michigan properties.  First, one of decedent's estate planners' handwritten notes from her initial meeting with decedent, which was properly admitted into evidence, stated:

For the trust distributions, the Michigan [properties] would still be left to his daughter [appellee].  The Indiana land that he controls, 200 acres in Reed Farm, Inc., would be left to [his grandson] David J. Reed, also known as DJ Reed.  He would like any residue after that split three ways[2] between his daughter [appellee], his son Roger Reed [appellant], and his son Gerald Reed [appellant].  His son David E. Reed is to take nothing from his estate.

We did talk about [appellee] getting an outright distribution.  Between her getting all of the Michigan [properties] as well then one-third of the residue, we noted that the unequal distribution could cause Roger and Gerald to react poorly. The discussion followed with us asking [decedent] why he would want [appellee] to receive an unequal distribution from her two brothers.  He advised that [appellee] gets the unequal distribution because of all the assistance she has provided to him

---

[2] As noted above, decedent ultimately did not leave appellee any of the residue of his estate, but the planner's notes indicate he initially wished to do so.

along the way. According to [decedent], Roger and Gerald do not assist him with anything. David would not be receiving anything at this point because of the prior assistance that has been provided to David during his lifetime. I do think we will need an in terrorem clause in this trust just in case. We did talk with [decedent] about meeting with him alone and he insisted that there was no reason for [appellee] to leave. At first, he indicated that he just wanted [appellee] to get more and it did not matter why. When we pressed a bit, he led with a bit of an outburst, in a non-confrontational way that it was because [appellee] helped with everything and Roger and Gerald do not help at all.

Second, decedent executed the Trust, which includes a provision leaving the Trust's membership shares of the LLC to appellee, on the same day he signed the LLC's Operating Agreement, which provided that the initial capital contribution to the LLC was the Michigan properties. Third, the estate planner who took the notes above and appellee, both of whom the probate court found to be credible, testified that decedent consistently stated his intent to leave the Michigan properties to appellee, and never talked about bequeathing it to anyone else.

Appellants presented no evidence to impeach the testimony or otherwise refute this evidence. They correctly argue that the initial burden was on appellee, not them, to introduce evidence of decedent's intent. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 379; 761 NW2d 353 (2008). Even so, appellee did, and it was then appellants' burden to rebut this evidence, which they did not. Instead, appellants argued, both before the probate court and on appeal, that decedent's actions were all part of an elaborate ruse to trick appellee—and apparently his own estate planner as well—into believing she would inherit the Michigan properties so that she would continue to provide him with assistance. Appellants argue that, because he signed the Operating Agreement but never filed the Articles of Organization, decedent never intended to form the LLC. Thus, appellants contend, decedent's choice to bequeath only the LLC membership to appellee in the Trust demonstrates that he did not intend for her to receive anything. Even if we were to consider this argument to be reasonable, it is not supported by the evidence. Although circumstantial evidence may suffice to create a question of fact, mere speculation and conjecture does not. *Karbel v Comerica Bank*, 247 Mich App 90, 97-98; 635 NW2d 69 (2001). The evidence supports the probate court's determination that decedent intended to leave the Michigan properties to appellee.

The evidence also supports the probate court's finding that decedent made a mistake of law. A mistake of law is a "mistake . . . regarding the legal effect of an agreement[.]" *Casey v Auto Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006). The probate court found defendant believed that signing the Operating Agreement, without fully organizing the LLC, was sufficient to give the Michigan properties to appellee. Testimony from both of decedent's estate planners indicated that they believed the Michigan properties could and would be transferred to

the LLC after decedent's death. Given the testimonies of the estate planners,[3] the probate court did not clearly err in finding that decedent, working off of the advice of his estate planners, made a mistake of law.[4]

Affirmed.[5]

/s/ Mark T. Boonstra
/s/ Christopher M. Murray
/s/ Thomas C. Cameron

---

[3] While not directly listed as a reason by the probate court, we also note that the Operating Agreement's erroneous claim that the LLC was properly organized also lends credence to the probate court's finding that decedent made a mistake of law.

[4] We note that appellants challenge the estate planners' credibility as witnesses for various reasons. But, this Court defers to the probate court on credibility determinations. *Erickson*, 202 Mich App at 331; MCR 2.613(C).

[5] We need not address appellee's arguments on cross-appeal, because they merely argued alternate reasons for affirmance.